RICHARD K. MORRIS ET AL. *v.* TOWN OF NEWINGTON ET AL.

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE No. 219431
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed February 1, 1979

*Sabatini & Budney,* for the plaintiffs.

*Daniel J. Hagearty,* for the defendants.

BIELUCH, J. The plaintiffs are property owners and an association of property owners in the Kimberley Road-Cherry Hill Drive area of the town of Newington, a residential zone located in the northwestern part of that town at the West Hartford town line. Although the immediate adjoining area of West Hartford is also residential in nature, a large regional shopping center has been established nearby and to the northwest. Shortly after this commercial area opened, vehicular traffic began to increase significantly on Kimberley Road and Cherry Hill Drive as a shortcut for shoppers.

Upon the petition of residents of Cherry Hill Drive for relief from this through traffic, the town council on March 30, 1976, adopted a resolution "[t]hat, in accordance with its authority under § 7-194 (8) and (17) . . . of the Connecticut General Statutes, the Town Council hereby directs the Town Manager to cause Kimberly [sic] Road at the West Hartford Town line to be closed to vehicular traffic May 1, 1976." The closing of Kimberley Road pursuant to this resolution was upheld by this court in a declaratory judgment action, and later affirmed by the Supreme Court in *Pizzuto* v. *Newington,* 174 Conn. 282.

On March 7, 1978, a council resolution to rescind the closing failed to pass by a single vote. Under the initiative provisions of § 411 of the town charter,

by petition to the town council, an ordinance reopening Kimberley Road at the town line was proposed. The petition was certified as legally sufficient by the town clerk.

Under the provisions of § 411, the town council on April 25, 1978, opted not to adopt the ordinance itself, but instead, to submit it "to the electors of the Town for a referendum vote to be held on May 31, 1978." The legal warning to the voters called them to a "referendum to be held on May 31, 1978 to approve or disapprove an ordinance as set forth in a petition filed with the Town Clerk of Newington on March 6, 1978," and recited the referendum in full. The results of the referendum were overwhelmingly in favor of the proposed ordinance. With 27 percent of the total electorate voting, 4010 persons, or 24.33 percent of the voters, approved the ordinance, while only 439 persons, or 2.67 percent of the voters, disapproved it. Of those voting, 90.13 percent supported the ordinance and 9.87 percent opposed it.

On the day following this referendum, the plaintiffs obtained an order from the court (*Aspell, J.*) directing the town of Newington and its officials to appear on June 13, 1978, and show cause, if any, why they should not "be temporarily enjoined from doing anything to open Kimberley Road until further order of this Court." In their complaint accompanying the application for a temporary injunction the plaintiffs sought a permanent injunction of like import and a judgment declaring "the referendum results null and void." Service of the complaint and order to show cause was made on June 2, 1978 upon the town of Newington, its town manager and mayor, and the members of its town council, the defendants in this action.

A special meeting of the town council was called for June 6, 1978, to consider and take action on

rescinding the March 30, 1976 closing of Kimberley Road. The notice of the meeting declared its purpose was "to give early effect to the initiative referendum" without waiting for the ordinance to become effective fifteen days after publication. Faced with this imminent action, the plaintiffs countered by obtaining from the court (*Aspell, J.*) on June 6, 1978, a temporary restraining order that the town and its officials not "take any action relative to Kimberley Road including any action that would cause said road to be opened until a hearing be held on June 13, 1978." The resolution proposed for consideration at this special meeting was therefore withdrawn.

The show cause hearing was held by the court (*Aspell, J.*) on June 13, 1978, after which the court issued the following order: "The Injunction is modified to the extent that the council may meet and take any action to rescind their prior vote. Any action to remove the barrier which would give effect to the referendum ordinance is stayed until further order of the Court."

At a special meeting held on June 19, 1978, the town council unanimously adopted a resolution rescinding "Resolution No. 76-36 of March 30, 1976 directing the closing of Kimberley Road to vehicular traffic at the West Hartford town line" after a lengthy discussion in which the public participated. The plaintiffs thereupon added a second count to their complaint attacking the legality of this action. A third count later sought to enjoin the reopening of Kimberley Road until the town obtained an indirect source permit under General Statutes § 19-508.

Succinctly stated, the issue before the court is whether Kimberley Road has been legally reopened to through traffic.

The actions of the town authorities are necessarily circumscribed by the general statutes and the local charter. The powers of a municipality are wholly statutory. *Sheehan* v. *Altschuler,* 148 Conn. 517, 526. It is necessary, therefore, to review these in the context of the issue presented here, for these are the provisions by which we must measure the legality of the action taken by the town concerning the vehicular use of Kimberley Road at its junction with the West Hartford town line.

General Statutes § 7-148 is the basic enabling law specifying the general powers of local government. Insofar as relevant here, it provides that "[a]ny town, city or borough, in addition to such powers as it has under the provisions of the statutes or by any special act, may, by ordinance . . . make rules relating to the regulation of traffic. . . ." Under the terms of General Statutes § 7-157, "[o]rdinances may be enacted by the legislative body of any town, city, borough or fire district. . . . Cities and other municipalities whose charters provide for the manner in which they may enact ordinances may enact ordinances in such manner." Newington in 1966 adopted a charter pursuant to the authority of the Home Rule Act. General Statutes §§ 7-187 through 7-201. Section 7-194 gives to home rule charter municipalities "specific powers in addition to all powers granted to towns, cities and boroughs under the constitution and general statutes . . . ." Enumerated therein is authority "(8) to . . . control and operate streets . . . (15) to keep open and safe for public use and travel and free from encroachment or obstruction the streets . . . in said town, city or borough . . . [and] (17) to regulate and prohibit the . . . use or opening of streets . . . ." Unlike § 7-148 of the General Statutes, this latter provision does not express the manner of exercising such powers.

Referring now to the provisions of the town charter, § 402 states that the town council is the local legislative body. Regular and special meetings of the council are authorized by § 404, but "[o]nly business, notice of which has been included in the call for such special meeting, shall be acted upon at any special meeting." Section 405 requires that all ordinances be introduced in written form without discussion at a meeting of the council. Under § 406, the council is required to hold a public hearing after publication of notice and the full text before adoption of a proposed ordinance. The ordinance becomes effective fifteen days after publication of notice of passage with description by title or subject matter.

Section 410 gives the electors or voters the right to petition for a referendum on any ordinance before its effective date. The ordinance shall be null and void in the event of a majority negative vote. The companion right in the public to move for the adoption of an ordinance is found in the initiative provisions of § 411, which states that "[t]he electors or voters shall have the power to propose to the council *any* ordinance, *except* an ordinance appointing or removing officials, specifying the compensation or hours of work of officials and employees, adopting the annual budget, authorizing the levy of taxes, or fixing the tax rate." (Emphasis added.) The procedure for initiative specifies that the ordinance shall be proposed by a petition filed with the town clerk for verification and certification to the next regular meeting of the council. The council shall within sixty days either adopt the proposed ordinance after a public hearing or submit the same to the electors or voters at a special election to be held within ninety days from certification, or it may be submitted at a general or town election within four months of certification. A majority

vote is sufficient for adoption, after which no such ordinance "shall be repealed or amended by the council except by vote of the electors or voters."

An ordinance is a municipal legislative enactment. *Duplin* v. *Shiels, Inc.,* 165 Conn. 396, 398; *Great Atlantic & Pacific Tea Co.* v. *Scheuy,* 148 Conn. 721, 723. It designates a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform, and permanent rules of conduct relating to the corporate affairs of the municipality. 5 McQuillin, Municipal Corporations (3d Ed.) § 15.01. The passage of an ordinance must follow the formal procedural steps specified by statute or charter. *First Church of Christ, Scientist* v. *Friendly Ice Cream,* 161 Conn. 223, 227–28; *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 325–26; *Jack* v. *Torrant,* 136 Conn. 414, 419.

An ordinance prescribes some permanent rule of conduct or of government which is to continue in force until the ordinance is repealed. A resolution, generally speaking, is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality. 5 McQuillin, Municipal Corporations (3d Ed.) § 15.02. Regulatory measures enacted by a city council pursuant to the police power must be in the form of an ordinance, while matters such as public works may originate with a resolution. *Hayes* v. *Hartford,* 144 Conn. 74, 76.

Where the charter of a municipality provides that action of the legislative body shall be by ordinance or resolution, it must act in the manner prescribed. *Burke* v. *Board of Representatives,* 148 Conn. 33, 42; 5 McQuillin, Municipal Corporations (3d Ed.) § 15.02.

The power of a municipality to enact an ordinance depends primarily upon whether the ordinance is in harmony and consistent with the power delegated to it by the state. *Bredice* v. *Norwalk,* 152 Conn. 287, 292. The subject matter under consideration by the town in these proceedings is the vehicular use of a public road. Legislative action pertaining thereto relates "to the regulation of traffic," and under § 7-148, such regulation may only be taken by ordinance. *Food, Beverage & Express Drivers Local Union* v. *Shelton,* 147 Conn. 401, 405; *Sullivan* v. *Mortensen,* 132 Conn. 289, 295; 5 McQuillin, Municipal Corporations (3d Ed.) § 15.03. The enumeration of "specific powers in addition to all powers granted to towns, cities and boroughs under the constitution and general statutes" over the control of streets for public use and travel in § 7-194 (8), (15) and (17) of the General Statutes, without prescribing the manner of utilizing such authority, such as the requirement of an ordinance in § 7-148, does not alter the need for an ordinance for the proper exercise of these particular governmental powers. See 5 McQuillin, Municipal Corporations (3d Ed.) § 15.04.

The March 30, 1976 "resolution" of the town council was, in essence, an "ordinance." It clearly ordained a legislative enactment closing a public road to vehicular traffic by dead-ending it, thereby causing a diversion of through traffic to other streets. Such was the declared purpose of the "resolution" according to its preamble.

Where a resolution is in substance and effect an ordinance, the name given it is immaterial if it is passed with all the formalities of an ordinance. It thereby becomes a legislative act, and whether it is called an "ordinance" or a "resolution" is not important. See *Food, Beverage & Express Drivers Local Union* v. *Shelton,* supra; 5 McQuillin, Municipal Corporations (3d Ed.) § 15.02.

A presumption arises that a resolution was not passed with the formality required for the passage of an ordinance unless it is shown that the resolution was passed with such formality. 5 McQuillin, Municipal Corporations (3d Ed.) § 15.02. By judicial finding this presumption no longer exists as to the resolution of March 30, 1976. In *Pizzuto* v. *Newington,* 174 Conn. 282, 286–87, the Supreme Court, in upholding the closing of Kimberley Road by this resolution, declared that "[w]here municipal authorities act in accordance with formal requirements, courts will interfere only 'where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize . . . [the action taken].' . . . The record reveals that . . . no . such claims were made in this case."

The initiative and referendum are recognized as instruments of democratic government, widely used and of great value. 5 McQuillin, Municipal Corporations (3d Ed.) § 16.48. An "initiative," as applied to municipalities, is "the power reserved to the people of a municipality residing therein to propose laws or ordinances. . . ." Ballentine's Law Dictionary (3d Ed.). The initiative allowed by § 411 of the Newington charter exemplifies this classic definition of the term. A "referendum" is "[t]he power of the residents of a municipality to approve or reject at the polls any act of the municipal legislative body." Ballentine's Law Dictionary (3d Ed.). The referendum permitted by § 410 of the town charter illustrates the black-letter definition of this term. The word "referendum," however, has a popular definition broader in scope which also includes in the term initiative action, viz., "[t]he determination of questions as to certain existing or proposed legislation by reference to a vote of the people . . . ." Ballentine's Law Dictionary (3d

Ed.). This enlarged meaning has been incorporated by Public Acts 1976, No. 76-311 into the General Statutes as § 9-1 (n), which gives as the first of three meanings of "referendum" the following: "(1) a question or proposal which is submitted to a vote of the electors of a municipality at any regular or special state or municipal election, as defined in this section."

The warning or call for the special election on the initiative proposal under § 411 of the charter was a notice of a "referendum" vote. It was published by the town clerk as directed in the resolution of the town council submitting the proposed ordinance to a "referendum" vote. The use of the term "referendum" in the warning and council resolution was correct and proper and in accordance with § 9-1 (n) of the General Statutes. As so used, the word "referendum" did not relate to the referendum provisions of § 410 of the town charter. Accordingly, the claim of the plaintiffs that "the people petitioning for a referendum clearly lost their right to petition by failing to take advantage of section 410 of the charter" within the prescribed fifteen day limitation after the March 30, 1976 council resolution blocking Kimberley Road to traffic is without merit in law and fact. The right of referendum under § 410 is separate and distinct from the right of initiative under § 411 exercised here.

The further argument of the plaintiffs that the issue of traffic control is solely one within the police power of the council that cannot be taken away by the voters on an initiative question is equally without substance. The scope of initiative extends by § 411 to "any ordinance" except specified personnel and fiscal ordinances. This broad range of legislation that may be proposed by initiative of the townspeople accords with the general law. Gener-

ally, the people may, by initiative, enact laws on matters upon which the legislative body has not acted, and may amend or even repeal laws already enacted. 42 Am. Jur. 2d, Initiative and Referendum, § 9.

The initiative ordinance proposed by petition to the town council filed on March 16, 1978, for the removal of the traffic barrier at the Newington-West Hartford town line erected by prior action of the council was authorized by § 411 of the charter. The right to control and regulate traffic on the streets of Newington can be legislated only by ordinance. General Statutes §§ 7-148, 7-194 (8), (15) and (17). Such ordinances may be adopted by the council under § 402 of the town charter, or proposed by the electors or voters exercising the right of initiative under § 411. The closing of Kimberley Road on March 30, 1976, was legislated by the town council; the reopening of the street on May 31, 1978, was legislated by initiative referendum. The former action of the council was in fact legally repealed by the latter vote of the citizens.

The plaintiffs next attack the initiative ordinance as illegal for want of notice and hearing as specified in § 406 of the town charter. This claim also is without basis. Section 406, requiring a public hearing after notice by its express terms, applies only to ordinances adopted by the town council and is not relevant to an initiative referendum by the electors or voters of the town. In the event that the council chooses to adopt a proposed initiative ordinance in lieu of submitting it to a referendum, as it did in this case, § 411 requires that it hold a public hearing, to which the notice requirements of § 406 would apply. The initiative referendum that took place is the highest form of democracy in the town government, and "warning" or notice thereof having been given to the legal voters by the

town clerk as required by General Statutes §§ 9-226 and 9-369a (c), a public hearing was not required by § 411 of the charter.

The plaintiffs claim that the phraseology of the question on the initiative referendum, by referring to the proposed ordinance by its title, renders the ordinance moot and of no effect. They argue that since Kimberley Road is presently open to two-way traffic in Newington up to the barrier at the town line, "[t]he initiative ordinance did nothing but state the present position of the road." The court notes that no claim is made that the voters were misled by the wording of the question on the ballot. This simplistic reasoning avails the plaintiffs no point.

The warning of the initiative referendum contained the proposed ordinance in its entirety as follows: "RESOLVED that Kimberley Road be opened to two-way traffic at the Newington-West Hartford Town Line and that any barrier restricting such traffic be removed." In accordance with the provisions of General Statutes § 9-369a (c), the purpose of the referendum was properly stated in the warning which repeated the council resolution of April 25, 1978, submitting to the electors the following question: "Shall the proposed ordinance reopening Kimberley Road to two-way traffic be adopted?"

The plaintiffs mistake the concise language of the referendum question, which was abbreviated to fit the voting machine ballot label, for the full text of the proposed ordinance filed with the town clerk and recited in the referendum warning. The warning requirements for a referendum to consider local questions are set forth in General Statutes § 9-369a (c). This statute provides that the municipal clerk shall have on file for public inspection the full text of a local question being submitted to

a referendum together with the designation thereof which is to appear upon the voting machines. If the designation of the question which is to appear upon the voting machine ballot label is not prescribed by law, the clerk shall phrase the designation of such question in a form suitable for printing on the ballot label. The warning of the election "shall include a statement that such question is to be so voted upon, the designation of such question to appear on the ballot labels, and a statement that the full text of the question is on file open to public inspection in the office of the clerk of such municipality." General Statutes § 9-369a (c).

The procedures observed in adopting the present initiative referendum complied with the requirements of § 9-369a (c). Since the brevity of the referendum question was authorized by statute in order to meet the space limitations of the ballot label, and since the full text of the proposed initiative ordinance was recited in the warning of the referendum and thus was available for public inspection, the plaintiffs have no valid complaint as to the form of the question submitted for the referendum vote on May 31, 1978.

The initiative ordinance having been legally adopted at the referendum, such ordinance was to become effective fifteen days after the publication of notice of passage in accordance with the provisions of § 406 of the town charter. No further action by the town council was necessary to accomplish the will of the people as expressed by their overwhelming vote to reopen Kimberley Road at the Newington-West Hartford town line. The subject matter of the initiative ordinance was removed from the legislative power of the council by the concluding provision of § 411 that "[n]o ordinance which shall have been adopted in accordance with

the provisions of this section shall be repealed or amended by the council except by vote of the electors or voters."

A special meeting of the council was held on June 6, 1978, to adopt a resolution for the announced purpose of circumventing the fifteen day wait under § 406 for the initiative ordinance to take effect. The temporary restraining order of the court intervened. After the injunction was modified, however, on June 13, 1978, the council at a special meeting on June 19, 1978, adopted a resolution repealing its 1976 closing of the street.

The plaintiffs' attack upon the validity of this resolution is sustained. Section 411 prohibits the repeal or amendment of an initiative ordinance by the town council. By anticipating the effective date of the ordinance, the council was attempting to amend the ordinance contrary to § 411. Furthermore, the reopening of Kimberley Road could properly be legislated only by an ordinance de jure or de facto, and not by a simple resolution adopted without the necessary formalities of an ordinance. The resolution of March 30, 1976, closing the street was a de facto ordinance, having been adopted pursuant to the formal requirements of an ordinance. *Pizzuto* v. *Newington,* 174 Conn. 282, 286. "A municipal corporation can repeal an ordinance only by an act of equal dignity, that is, by an ordinance, and not by methods not passed and published with the same formality as is required of an ordinance." 6 McQuillin, Municipal Corporations (3d Ed.) § 21.13, p. 212. Resolutions adopted by a municipal council "cannot take the place of established ordinances." *Sullivan* v. *Mortensen,* 132 Conn. 289.

The plaintiffs' third count seeks to enjoin the reopening of Kimberley Road because the town failed to apply for and obtain an indirect source

permit under § 19-508 of the General Statutes and the air pollution control regulations of the commissioner of environmental protection. Since the plaintiffs have failed to brief this issue, it is considered abandoned. *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 366. It suffices to note, however, that the plaintiffs have failed to allege and prove that such a permit was required.

For the foregoing reasons, its is hereby adjudged and decreed as follows:

1. The injunction granted by the court (*Aspell, J.*) on June 13, 1978, is dissolved.

2. The application of the plaintiffs for a permanent injunction enjoining the town of Newington, its agents, servants and/or employees and the members of its town council from reopening Kimberley Road to vehicular traffic at the Newington-West Hartford town line is denied.

3. The initiative ordinance approved by referendum on May 31, 1978, is declared to have been legally adopted in accordance with the provisions of § 411 of the charter of the town of Newington, but cannot become effective until there is further compliance with the provisions of § 406 for publication of notice of passage.

4. The resolution adopted by the town council of Newington on June 19, 1978, rescinding its action of March 30, 1976, is declared to be null and void and of no legal effect.

5. Judgment may enter for the defendants.

6. No costs shall be taxed in favor of either party.