BLUE SKY BAR, INC., ET AL. *v.* TOWN OF
STRATFORD ET AL.
(2883)

BORDEN, SPALLONE and DALY, Js.

Argued March 15—decision released June 18, 1985

*Lawrence J. Merly,* with whom were *Nicholas E. Wocl* and, on the brief, *Rita A. Steinberger,* for the appellants (plaintiffs).

*Carl E. Watt,* assistant town attorney, for the appellees (defendants).

SPALLONE, J. This is an appeal from the trial court's refusal to declare invalid and enjoin the enforcement of an ordinance enacted by the defendant town which prohibits vending from any type of motor vehicle upon streets or public property within its limits.

The plaintiff Blue Sky Bar, Inc. (Blue Sky Bar), engages in the business of selling ice cream and related products in southwestern Connecticut from specially designed mobile vending trucks during a vending season which runs approximately from March 18 to October 18 of each year. Most of the sales take place in residential neighborhoods with the balance taking place at recreation areas, playgrounds and beaches. The ice cream which Blue Sky Bar sells is purchased from suppliers in seven states. Blue Sky Bar's trucks are leased for the vending season to individual vendor-drivers who purchase their supply of ice cream exclusively from Blue Sky Bar. Blue Sky Bar sells no ice cream products at retail.

The plaintiffs Michael A. McDougall and Brian Tomasko individually applied for and were issued permits by the defendant to vend ice cream from a motorized vehicle during the 1983 vending season. They each paid the town a permit fee of $100. McDougall and Tomasko also obtained, upon payment of a $50 fee, health permits to vend food in Stratford.

On May 23, 1983, the town passed the ordinance in question, effective upon passage, which provides in pertinent part: "It shall be unlawful for any person to vend or peddle upon the public streets, public property, and town property of the town of Stratford from any type of motor vehicle any commodity whatsoever."[1] Shortly thereafter, the plaintiffs brought this action to enjoin the defendants from enforcing the ordinance, and to obtain a declaratory judgment as to its validity. Upon application by the plaintiffs, the trial court issued a tem-

---

[1] The ordinance, in entirety, provides as follows: "It shall be unlawful for any person to vend or peddle upon the public streets, public property, and town property of the town of Stratford from any type of motor vehicle any commodity whatsoever.

"Any person who violates this article shall be fined not less than one hundred dollars ($100.00)."

porary order restraining the enforcement of the ordinance pending a full hearing on the merits. The case was heard on November 17, 1983, and, on December 16, 1983, the court rendered judgment for the defendants. In their appeal from that judgment, the plaintiffs claim that the trial court erred in concluding (1) that the defendant had the statutory authority to pass the ordinance, (2) that the ordinance was a reasonable exercise of the defendants' police powers, and (3) that the ordinance was constitutionally permissible.[2]

## I

The resolution of the question of whether the defendants had the power to prohibit vending from motorized vehicles or, for that matter, to prohibit vending at all hinges upon the relationship between General Statutes §§ 21-37 and 7-148 (c) (7) (H) (iv). Section 21-37, which was enacted in 1909 and has remained in large part unchanged, provides, in part, that "[a]ny town may make reasonable ordinances with reference to the vending or hawking upon its public streets . . . of any goods, wares or other merchandise at public or private sale or auction, or to the vending or peddling of such articles from house to house within its limits . . . ." Section 7-148 (c) (7) (H) (iv), which is part of the Home Rule Act and was adopted in 1982, states that any municipality has the power to "[p]rohibit, restrain, license and regulate the business of peddlers, auctioneers and junk dealers in a manner not inconsistent with the general statutes."

---

[2] The plaintiffs also claim that General Statutes § 7-148 (c) (7) (H) (iv) is unconstitutional to the extent that it prohibits the operation of a legitimate business. The record indicates that this claim was made for the first time on appeal. Pursuant to Practice Book § 3063, we are not bound to consider claims of error, even those raising constitutional questions, which were not distinctly raised at trial. The plaintiffs have not presented any exceptional circumstances which would justify our departure from this rule. *Tucker* v. *Alleyne,* 195 Conn. 399, 402 n.3, 488 A.2d 452 (1985); *First New Haven National Bank* v. *Rowan,* 2 Conn. App. 114, 116 n.4, 476 A.2d 1079 (1984).

The plaintiffs argue that the ordinance is invalid because it is inconsistent with § 21-37, which permits only the enactment of "reasonable ordinances" with reference to, rather than the prohibition of, vending. They further argue that § 21-37 is the more specific of the two statutes, and therefore is controlling.

When two statutes appear to conflict but can be construed together, both are given effect. *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 607, 376 A.2d 71 (1977). In considering a potential conflict, it is presumed that the legislature intended to enact a consistent body of law. *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984). When conflicting statutes cannot reasonably be reconciled, it is a well settled principle of construction that the later statute repeals by implication the earlier one to the extent of the repugnance. *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 521, 468 A.2d 574 (1983). A later enactment will be given that effect without regard to the characterization of either act as general or specific. Id. Since repeal by implication is generally disfavored, however, that route is incumbent upon us only when the two relevant statutes cannot stand together. Id.

In this case, we find that the two statutes are not irreconcilable. The trial court viewed, and so do we, § 7-148 (c) (7) (H) (iv) as an elaboration of the types of action a municipality may choose when enacting a reasonable ordinance in the exercise of its police powers under § 21-37. This construction gives both statutes efficacy. The mere overlap of the two statutes does not constitute the implied repeal of the earlier. *State* v. *Carbone,* 172 Conn. 242, 256, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2965, 53 L. Ed. 2d 1063 (1977). We conclude that the trial court did not err in finding that the defendant possessed the statutory authority to prohibit vending from motorized vehicles.

## II

The plaintiffs next argue that the trial court erred in finding that the ordinance was a reasonable exercise of its police powers. An ordinance is a municipal legislative enactment. *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981). "It designates a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform, and permanent rules of conduct relating to the corporate affairs of the municipality. 5 McQuillan, Municipal Corporations (3d Ed.) § 15.01." *Morris* v. *Newington,* 36 Conn. Sup. 74, 80, 411 A.2d 939 (1979). For purposes of judicial review, an ordinance is subject to the same canons of construction as are applied to state statutes. *Aaron* v. *Conservation Commission,* supra; *Manchester* v. *Manchester Police Union,* 3 Conn. App. 1, 6, 484 A.2d 455 (1984).

Whether conditions require the degree of regulation imposed by an ordinance is a matter for the judgment of the legislative body of the municipality. *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 553, 163 A.2d 548 (1960). "Where municipal authorities act in accordance with formal requirements, courts will interfere only 'where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize . . . [the action taken].' *Whitney* v. *New Haven,* 58 Conn. 450, 457, 20 A. 666 [1890]; *LaTorre* v. *Hartford,* 167 Conn. 1, 9, 355 A.2d 101 [1974]; 13 McQuillan, Municipal Corporations (3d Ed.) §§ 37.03, 37.26." *Pizzuto* v. *Newington,* 174 Conn. 282, 286, 386 A.2d 238 (1978). The need, expediency and wisdom of a legislative enactment lies beyond the judicial realm; *Karp* v. *Zoning Board,* 156 Conn. 287, 297, 240 A.2d 845 (1968); and the propriety of an enactment

is immaterial for purposes of our review. *State* v. *Darazzo,* 97 Conn. 728, 732, 118 A. 81 (1922).

The parties stipulated that the ordinance was enacted out of concern for public safety, and the record reveals that this concern focused upon the town's children. Although the parties also stipulated that no incidents resulting in personal injuries involving Blue Sky Bar trucks had occurred during the 1983 vending season, there is no indication that any evidence was presented to the trial court to contradict the soundness of the defendant's concern for public safety in the future.

Courts indulge every legal presumption and every reasonable inference of fact in favor of the validity of police power legislation. 6 McQuillan, Municipal Corporations (3d Ed.) § 24.31. The existence of facts justifying the enactment are assumed. Id. This strong presumption of legislative validity is overcome only when it plainly appears that the terms of the legislation are not reasonable or that they are not rationally adapted to the promotion of public health, safety, convenience or welfare. *Young* v. *West Hartford,* 111 Conn. 27, 31–32, 149 A. 205 (1930). The party challenging the enactment bears the burden of overcoming this presumption. *Franklin Furniture Co.* v. *Bridgeport,* 142 Conn. 510, 514, 115 A.2d 435 (1955). We find that the plaintiffs failed to meet this burden.

### III

The plaintiffs further argue that the ordinance is in violation of the due process, equal protection and commerce clauses of the constitution of the United States. In their due process and equal protection claims, they contend that the ordinance infringes on their fundamental right to engage in a lawful business and impermissibly distinguishes between those who vend from motorized vehicles and those who vend from non-motorized vehicles and from fixed locations.

Legislative regulation in the economic sphere is accorded considerable deference by the courts; *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 306, 417 A.2d 343 (1979); and is subject to the mildest review under the fourteenth amendment. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 186, 479 A.2d 1191 (1984). If the enactment has a legitimate purpose and is designed to accomplish that purpose in a fair and reasonable way, it satisfies the constitutional requirements of due process and equal protection. *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 315. We presume the constitutionality of the statutory discriminations in economic legislation and require only that the classification be rationally related to a legitimate state interest. *New Orleans* v. *Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); *Jackson Firefighters Assn.* v. *City of Jackson,* 736 F.2d 209, 213 (5th Cir. 1984).

We have already found that the purpose of the ordinance is valid and that the means the defendant chose to accomplish that purpose are reasonable. Under the relaxed constitutional standard of review applied to economic regulation, we also find that the challenged classification is rationally related to the attainment of that goal.

The plaintiffs additionally argue that the legislative prohibition on sales from motorized vehicles constitutes an impermissible burden on interstate commerce. In support of this position, they point out that certain of the products they sell are purchased from out-of-state suppliers and are thus in the stream of interstate commerce.

State regulations which affect interstate commerce are presumptively valid where they are exercises of traditional police powers. *L & L Started Pullets, Inc.* v. *Gourdine,* 592 F. Sup. 367, 374 (S.D.N.Y. 1984). "A

state statute must be upheld if it 'regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental . . . unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' *Pike* v. *Bruce Church, Inc.,* 397 U.S. 137, 142 [90 S. Ct. 844, 25 L. Ed. 2d 174] (1970), citing *Huron Cement Co.* v. *Detroit,* 362 U.S. 440, 443 [80 S. Ct. 813, 4 L. Ed. 2d 852] (1960)." *Edgar* v. *Mite Corporation,* 457 U.S. 624, 640, 102 S. Ct. 2629, 73 L. Ed. 2d 269 (1982).

Local laws successfully challenged as violative of the commerce clause generally involve economic protectionism by one state against neighboring states. See *L & L Started Pullets, Inc.* v. *Gourdine,* supra, 375, and cases cited therein. The ordinance in question clearly does not fall within that realm. It is rationally related to the general welfare of the community and its impact, if any, on interstate commerce is purely incidental. We consequently find that this ordinance does not impermissibly interfere with interstate commerce.

There is no error.

In this opinion DALY, J., concurred.

BORDEN, J., dissenting. I disagree with the majority's decision that the defendant has the statutory power to prohibit the plaintiffs' business of vending from a motor vehicle. Therefore, I dissent.

I agree with the majority that General Statutes §§ 21-37 and 7-148 (c) (7) (H) (iv) can and should be read together to give effect to both. In doing so, however, I reach the contrary result.

There is no doubt, and the majority does not question, that General Statutes § 21-37 does not authorize

the defendant to prohibit outright the plaintiffs' business. It provides in pertinent part: "Any town may make reasonable ordinances with reference to the vending . . . upon its public streets . . . of any goods, wares or other merchandise . . . including the imposition of a fee . . . applicable with respect to any person engaged in such vending . . . for the privilege of so vending . . . such merchandise. Any ordinance adopted pursuant to this section which requires a permit may require that no such permit shall be issued to any person who has not obtained" a state sales tax permit. Under this statute a municipality's power to prohibit street vendors is limited to those vendors seeking to ply their trade in violation of such "reasonable ordinances." See also General Statutes § 21-38, which authorizes a fine for peddling in violation of any such ordinance.

Thus, the defendant's power to prohibit outright the plaintiffs' otherwise lawful business must derive, if at all, from General Statutes § 7-148 (c) (7) (H) (iv). That section, however, limits the power of the defendant to "[p]rohibit . . . the business of peddlers . . . *in a manner not inconsistent with the general statutes.*" (Emphasis added.) Because of recognized principles of home rule and of statutory construction, this language simply throws the inquiry back to the defendant's power to prohibit as limited by General Statutes § 21-37.

It is axiomatic that "[a] municipal corporation . . . has only the powers which are expressly conferred upon it by the general statutes or by some special act of the General Assembly and those which are fairly to be implied as necessary to carry into effect the powers expressly given." *Old Colony Gardens, Inc.* v. *Stamford,* 147 Conn. 60, 62, 156 A.2d 515 (1959). It is equally axiomatic that "[a] statute which *restricts* the conduct of an occupation which was lawful at common law

should be construed with reasonable strictness." (Emphasis added.) *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617, 153 A.2d 412 (1959). "A statute granting to a city authority to do a particular thing, with a limitation on the power, must be construed so as to give effect to the limitation as well as to the power granted." (Footnote omitted.) 2 McQuillin, Municipal Corporations (3d Ed.) § 10.18a.

Thus, in order for a statute to be read as authorizing the complete *prohibition* of an otherwise lawful occupation, it should be read strictly and should authorize such prohibition clearly and unambiguously. General Statutes § 7-148 (c) (7) (H) (iv) does not. Here, the town's authority under General Statutes § 7-148 (c) (7) (H) (iv) is limited to prohibiting vending in violation of "reasonable ordinances" adopted pursuant to General Statutes § 21-37, a limitation which must be given effect.

It is also significant that General Statutes § 7-148 (c) (7) (H) (iv) is part of General Statutes § 7-148 (c) (7) (H), which has fourteen subparts defining local powers of public health and safety. Only two, subparts (iv) and (ix), restrict the exercise of the localities' powers "in a manner not inconsistent with the general statutes." The legislature's selection of that restriction in some parts of General Statutes § 7-148 (c) (7) (H) and not in others means that it intended that the power to prohibit street vending be limited by General Statutes § 21-37.

I would therefore find error on this issue, and would not reach the other claims of the plaintiffs.